IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19CR00047-001 |
| | ) | |
| NANCY DEGOLLADO | ) | |

## SENTENCING MEMORANDUM

**COMES NOW** the defendant, Nancy Degollado, by counsel, and offers the following sentencing memorandum in support of her sentencing on April 20, 2021. For the reasons set forth herein, Ms. Degollado requests that she be sentenced to the mandatory minimum sentence of ten years in regard to the conspiracy to distribute methamphetamine charge to which she plead guilty.

### Statement of the Case

Ms. Degollado was charged on October 8, 2019 in a nine-count indictment that alleged she conspired to distribute and possess with intent to distribute and to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of Title 21 U.S.C. Section 846 and 841(b)(1)(a).

After being held on unrelated state court charges in Georgia, Nancy was returned to Virginia on June 11, 2020 via a writ. Nancy then plead guilty pursuant to a plea

agreement to Count One of the indictment which carried a mandatory minimum ten-year sentence. Her plea agreement further stipulated that pursuant to the 2018 United States Sentencing Guidelines Manual, that she was found to have distributed at least five kilograms but less than 15 kilograms grams of methamphetamine resulting in a drug weight classification of level 34. According to the Presentence Investigation Report (hereinafter "PIR"), her criminal history category is VI and she was also classified as an organizer or leader resulting in an adjusted offense level of 38 and total level offense level of 35. As currently calculated, her guideline range is 292 to 365 months.

Ms. Degollado has objected to both her criminal history category classification and her classification as an organizer or leader in the conspiracy and believes her guideline recommendation should be much lower.

### Nature and Circumstance of Defendant's Involvement in the Offense

As noted above, Nancy was charged and plead guilty to a conspiracy to distribute methamphetamine with several other co-conspirators that she did not know. In fact, her only connection with the conspiracy was with Michael Scott Dear, an individual she did not know until being contacted by a middleman. (Presentence Investigative Report, paragraph 12, hereinafter "PIR at 12").

Nancy's interaction with Mr. Dear was limited to three transactions which occurred over a roughly three week period (PIR at 12). In fact, in the first transaction, Nancy was not present and took place when her boyfriend fronted two kilograms of methamphetamine to Mr. Dear following Nancy's arrest in Cobb County, Georgia (PIR at 12).

About a week later, Mr. Dear traveled from Virginia to Georgia again and brought $7,500.00 in money for Nancy to purchase 1.5 kilograms of methamphetamine. Of this amount, Nancy gave Mr. Dear one kilogram of methamphetamine and kept one half kilogram as she was still owed $2,500.00 from Mr. Dear from the first transaction (PIR at 12).

The second and final time Nancy met Mr. Dear occurred about two weeks later at a Sheraton Hotel in Atlanta, Georgia. On this occasion, Mr. Dear received three kilograms of methamphetamine. He paid $14,500.00 for two of them and received the other on consignment for $7,500.00. Nancy was incarcerated shortly thereafter and never met Mr. Dear again, only having one more phone conversation directing him to pay the remaining money owed (PIR at 12). It is important to note that Mr. Dear first contacted Nancy through a middleman and each of the later transactions was initiated or organized on his end by a call from Mr. Dear to Nancy.

Overall, Nancy had limited contact with Mr. Dear and the contact was originally initiated by him; her contact with Mr. Dear was limited to a short three week period in a conspiracy which continued over several months after her contact with him ended; she never had contact with any other of the co-defendants; she never traveled to Virginia to distribute methamphetamine; she never had knowledge of what happened to the methamphetamine once it was given to Mr. Dear or whom he gave it to; and she never took any organizational steps to direct Mr. Dear's or other person's conduct and activities.

While her ties to the conspiracy in Virginia are limited, Nancy is remorseful and has accepted full responsibility for her actions and plead guilty to count one of the indictment. Additionally, the most damning evidence the government obtained against Nancy came from a voluntary confession which she gave when investigators came from Virginia to visit her on February 26, 2019 while she was incarcerated in Georgia to discuss her interactions with Mr. Dear (PIR at 12).

## The Guideline Calculation

Pursuant to her plea agreement, Nancy received a base offense level of 34 (PIR at 19). With a three level reduction, her total offense level should be a total offense level of 31. However, the probation officer has added an additional four points under USSG Section 3B1.1(a) classifying her as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, for an adjusted offense level of 38 and total offense level of 35 (PIR 22 and 28). For reasons stated in the previous section and which will follow, Nancy believes that her classification as a leader or organizer is erroneous and her total offense level should be 31 instead of 35.

The probation officer also scored her criminal history category at the highest level, category VI, which then recommends a guideline imprisonment range of 292 months to 365 months if her total offense level is found to be 35 (PIR at 64). However, in 2010, Nancy was sentenced to two years to serve in Cherokee County, Georgia on April 21, 2010 for a probation violation and to two years to serve in Cobb County, Georgia three months later on July 20, 2010 which ran concurrent with her Cherokee County sentence (PIR 31 and 32). Nancy believes that instead of being assigned six

criminal history category points for two prior sentences, she should receive only three, resulting in a criminal history category of V.

Section 3B.1.1(a) of the USSG provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by four levels."

It is the government that bears the burden of proving by a preponderance of the evidence that the defendant should receive an aggravating role adjustment. *See, e.g., United States v. Al-Rikabi*, 606 F.3D 11,14 (1st Cir. 2010); *United States v. Cruz Camacho*, 137 F.3d 1220, 1224 (10th Cir. 1998) (The burden is on the government to prove by a preponderance of the evidence, the facts necessary to establish a defendant's leadership role").

Further, to qualify as an organizer or leader, the defendant must have exercised a significant degree of control and decision making authority over the criminal activity. In *United States v. Bolden*, 596 F.3d 976 (8th Cir. 2010), the court affirmed the district court's conclusion that the defendant was an organizer or leader of a drug conspiracy, where the evidence showed that the defendant "recruited others to join the conspiracy," directed those members to distribute drugs," supplied drugs for distribution," "retained a large portion of the profit for himself," and "played a role in setting up the [drug] transactions." *Id.* At 984; *see also United States v. Garcia*, 512 F.3d 1004, 1006 (8th Cir. 2008)(which affirmed the application of Section 3B1.1(a) where the defendant "recruited others, and he directed others to package and deliver drugs").

Clearly none of the factors listed above apply to Nancy's role in the above conspiracy. She did not recruit Mr. Dear. He contacted her initially through a middleman and then initiated the three follow up transactions. She did not know any of the other persons taking place in the conspiracy so she could not and did not recruit anyone. Further, she did not direct the activities of any person involved in the activity.

In the Addendum to the Presentence Investigation Report, the probation officer addresses Nancy's objection #2 to being classified as an organizer or manager by making the following response: "The defendant in this case was the main source of methamphetamine that Mr. Dear used to then distribute to those working beneath him. Had Ms. Degollado not been able to supply multiple kilograms of methamphetamine to Mr. Dear it is possible this conspiracy would not have had as many participants or as high a drug weight. The defendant acted as a manager in the conspiracy by controlling quantity of drugs sold to Mr. Dear to further distribute in the Western District of Virginia.. Therefore, no changes will be made to the report." (Addendum to PIR, pages 1-2).

In reaching this conclusion, however, the probation officer incorrectly designates Nancy as a manager based solely on the amount of her drug weight, and its possible future distribution in Virginia, of which she had no knowledge. Under this theory, she would effectively be punished twice for the amount of methamphetamine she distributed. Courts have found this to be erroneous argument. In *United States v. Jones,* 160 F.3d (8th Cir. 1998), the court noted that the "record did not support four level-enhancement for defendant's aggravating role as lead or organizer under Section 3B1.1(a) in conspiracy to

possess with intent to distribute cocaine and cocaine base, where defendant merely sold drugs for resale and did not undertake organizational role in drug operation or cocaine shipments; although defendant provided significant amount of drugs to conspiracy, his status as supplier or distributor is already reflected in his base offense level." *See also United State v. Miller*, 91 F.3d 1160 (8th Cir. 1996)(further cites removed), "Although defendant sold large enough quantities of methamphetamine that it was reasonable to infer that he knew drugs were being resold, defendant was not a Section 3B1.1(a) organizer or leader, where he did not have involvement in resales and there was no evidence he controlled his buyers in their resale of methamphetamine."

Similarly, Nancy may have been able to infer that the methamphetamine she sold would be resold at some point. However, she had no contact with any other conspirators and did not know them at all so she did not organize or lead them in any way and did not do so simply based on the amount of methamphetamine she sold. Under her plea agreement, she agreed to a base offense level of 34 based on the amount of drugs attributed to her distribution which results in a mandatory minimum sentence and a lengthy recommended sentencing guideline range.

If the government has not proved by a preponderance of the evidence that Nancy was a leader or organizer in the conspiracy and she receives a total offense level of 31 with a criminal history category of V her discretionary guideline range would be be 168 months to 210 months. In the alternative, her discretionary guideline range with a total offense level of 31 and a criminal history category of VI would be 188 to 235 months.

## The Sentencing Mandate and its Application to Ms. Degollado

Following *United States v. Booker*, 543 U.S. 220, the Supreme Court of the United States ruled that the mandatory guideline system established under the sentencing Reform Act of 1984 (SRA) was unconstitutional. Since that time, the guidelines have served as merely advisory in sentencing. See *Booker*, 125 S. Ct. at 757 (2005).

The guidelines thus are one of the many factors to be considered in determining a sentence necessary to achieve the goals under 18 U.S.C. § 3553(a) (2). Under this section, the court is to impose a sentence "sufficient, but not greater than necessary to comply with the four purposes of sentencing. These purposes under 3553(a)(2) are:

(A) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

(B) the need to afford adequate deterrence to criminal conduct;

(C) the need to protect the public from further crimes of the defendant; and

(D) the need to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Furthermore, under 3553(a), the court must consider several other factors to craft the proper sentence including (1) "the nature and circumstance of the offense and the history and characteristic of the defendant;" (2) "the kinds of sentences available;" (3) the Guidelines and policy statements issued by the Sentencing Commission, including the

guideline range; the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553 (a)(I), (a)(3), (a)(5)-(7).

As noted previously, Nancy faces a mandatory minimum ten-year sentence with a discretionary guideline range of either 168 to 210 months or 188 months to 235 months if she is not an organizer or a leader. A sentence of the ten-year mandatory minimum, which is four years to five years eight months below what she believes her discretionary guidelines to be, would serve all the purposes, of the sentencing mandate. First, a ten-year sentence would not only impart to Nancy that her legal misconduct was very serious but would also be a drastic deterrent to Nancy ever being involved in drug distribution in the future. Nancy recognizes that any future drug use or distribution on her part would result in more time being revoked on her pending sentence in this case, but also could result in an additional decade of her life being wasted.

Needless to say, to the extent she remains a danger to the public, a ten-year sentence removes Nancy from society for a decade and gives her more than ample time to reflect on her wrong doing. Finally, a ten-year sentence would provide an extended period of sobriety for Nancy and also would allow her to pursue rehabilitation for her drug addiction through the Residential Drug Assistance Program (hereinafter "RDAP"), even though this program could be successfully completed in much less time. For all these reasons, a sentence to the mandatory minimum accomplishes all the goals of then sentencing mandate, and a lengthier sentence provides little, if any, greater deterrence or benefits.

## Ms. Degollado's Special Circumstances and Characteristics

As noted in her presentence investigative report. Nancy has suffered from severe drug addiction and mental health issues during her life (PIR at 53 and 54).

Nancy suffered from several traumatic events during her childhood which she described as less than ideal. First, her father Herbertio Garcia was an alcoholic, had several DUIs and Nancy witnessed him often being abusive toward her mother, Elia Garcia (PIR at 47 and 49).

Additionally, her father would lock her and her sibling up for several hours in a closet after becoming intoxicated and angry at his children (PIR at 49). From a young age, she had more responsibility than most children as her father would take her to his job sites and use her as a translator in the course of his business as she was the only family member who spoke English (PIR at 49).

Her early family life further deteriorated when her father left the family when she was 15. At that time she began using drugs and rebelling (PIR at 49). At the age of 16 or 17, she began using cocaine and ended up leaving her mother's residence (PIR at 49). Prior to this time she had shown great academic promise in school obtaining straight As and earning a full academic scholarship to Savannah State (PIR at 58). However, Nancy's initial struggles with drug abuse derailed her academic career and she ended up dropping out of school in the 12th grade although she reports that she did obtain her GED from the Cobb County Education District in 2001 (PIR at 58).

Upon leaving her mother's residence at age 17, Nancy moved to Mexico and shortly thereafter became pregnant with her first child before coming back to live with

her mother in 2001 and then marrying Christopher Degollado later that year (PIR at 49-50). Like her childhood, her marriage was less than ideal as Mr. Degollado was mentally and physically abusive to her (PIR at 50). In 2005, Nancy attempted suicide by taking 90 high blood pressure pills (PIR at 2005). Despite her difficult marriage, Nancy had three wonderful children whom she has a close relationship with and whom now reside with Nancy's mother in Smyrna, Georgia. Her children are Dafne Degollado, age 19, Naomi Degollado age 19 and Christy Degollado, age 16 (PIR at 50).

Nancy and Christopher Degollado separated in 2009 and Mr. Degollado returned to Mexico that year although their divorce was not granted until 2013 (PIR at 50). Additionally, Nancy's father was deported to Mexico two years earlier in 2007 (PIR at 49).

During the time of her marriage and following her separation, Nancy worked a number of different jobs which included working as a bank teller, working at a dry cleaner, working as a waitress and cleaning houses (PIR at 60). From 2010 to 2015, Nancy was successful and ran her own cleaning business until she began her ultimate downfall upon being introduced to methamphetamine in 2015 (PIR at 55 and 60).

Significantly, Nancy has struggled with drug addictions throughout her life. She began using alcohol at the age of 15 and progressed to drinking daily to the point of intoxication (PIR at 54). She began using cocaine at the age of 16 or 17 and began using marijuana at age 18 and at one point was using the drug daily (PIR at 49 and 54).

However, her life completely fell apart when she was introduced to methamphetamine in July of 2015 (PIR at 55). Initially, Nancy believed

methamphetamine was a drug that could be used socially but she quickly discovered it was a drug that would completely control her and destroy her life (PIR at 55, Pages 1 and 2 of Defendant's Exhibit 3, letter to the court, hereinafter Exh. 3."

Within a short period of time Nancy was using methamphetamine daily and began to distribute the drug to support her habit (PIR at 55, Exh. 3, page 1). Within five months of first using methamphetamine, she was incarcerated (PIR at 55). Her severe addiction to methamphetamine led her to being evicted and the loss of her home and to her children now living with her mother (Exh. 3, pages 1 and 2).

Eventually, Nancy sought treatment for her addiction in 2016 at the Palm House, a rehabilitative facility in Athens, Georgia (PIR 56). Her addiction was so dire, however, that she began began using methamphetamine intravenously while in this program and had to leave the facility (PIR at 56).

From there, Nancy continued to use daily resulting in her receiving a two-year sentence on July 10, 2017 for possession of methamphetamine (PIR 35). Upon release from incarceration, Nancy succumbed to her addiction once again and in late 2018 and early 2019 her life completely fell apart. At this time, Nancy was using methamphetamine daily; her family was no longer talking to her; she was homeless; she was suicidal and was informed that she could not get counseling due to her then active abuse; she had received new criminal charges related to her addiction; and she was actively making plans to end her life at the time of her arrest. Due to her severe addiction issues, she has been identified by her probation officer as a good candidate for RDAP (PIR 57 and Exh. 3, page 1-2).

## Conclusion

In applying the sentencing factors found in 18 U.S.C. § 3553 (a), it is clear the most appropriate sentence for Nancy should be a sentence at the ten-year mandatory minimum as it accomplishes all the goals of sentencing found therein. In addition, a recommendation for RDAP would greatly increase the chances the that she will be redeemed as a successful member of society upon her release from incarceration as well as be an active participant in her children's life. Such a sentence would be the most effective and serve the ends of justice most appropriately.

**NANCY DEGOLLADO**

**BY: STEPHEN R. WILLS**
**Counsel for Defendant**

## Certificate of Service

I hereby certify that I electronically filed this Sentencing Memorandum on April 15, 2021 with the Clerk of Court using the CM-ECMF system, which will electronically notice all counsel of record.

/s/ Stephen R. Wills
Counsel of Record for Defendant