**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-CR-47-001** |
| | ) | **JUDGE JONES** |
| **NANCY DEGOLLADO** | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States of America, by and through undersigned counsel, and files this sentencing memorandum for the Court's consideration in the above-referenced matter scheduled for sentencing on April 20, 2021.

### Statement of the Case

*Summary of the Facts*

A summary of the defendant's offense conduct is contained in the Presentence Report ("PSR").[1]  (ECF Doc. 479, PSR, Sealed Document, at ¶¶ 8-14.)   In brief summary, the defendant served as the main source of supply for an eleven-member methamphetamine conspiracy that operated in Southwest Virginia over a fourteen-month period.  (*Id*.)   The defendant admitted she personally distributed a total of 7 kilograms methamphetamine on three separate occasions to co-defendant Michael Dear, who redistributed methamphetamine Degollado on occasion fronted to him.  (*Id.*)   The defendant utilized sources of supply outside the conspiracy to acquire methamphetamine for distribution to co-defendant Dear.  (*Id.* at ¶ 12.)   She admitted she made accommodation arrangements for co-defendant Dear at a Georgia hotel, where one transaction

---

[1] The United States expects to utilize the PSR as an exhibit at the sentencing hearing.   The final PSR is filed with the Court under seal as ECF Doc. 479.

1

occurred. (*Id.*) In total, co-defendant Dear paid Degollado approximately $37,000 in cash and Green Dot cards and owed her an additional $7,000 for methamphetamine she fronted to him. (*Id.*) Degollado admitted she knew co-defendant Dear distributed the methamphetamine she fronted to him and that Dear then paid her from the proceeds of distribution. (*Id.* at ¶¶ 12-13.)

The United States will present additional evidence for the Court's consideration at the defendant's sentencing hearing to provide further details about her role in the offense and other factors relevant to sentencing.

### *The Presentence Report*

The defendant stands convicted of one count from the indictment: Count 1, Conspiracy to Possess with Intent to Distribute and Distribute 500 grams or more of a mixture and substance containing Methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, which carries a mandatory minimum penalty of 10 years' imprisonment and up to life, a $10,000,000 fine, supervised release of at least 5 years, and a $100 mandatory assessment. (ECF Doc. 479, PSR, at ¶¶ 64, 67, 68, 72.)

The PSR utilized the 2018 Guidelines Manual to determine the defendant's offense level. (*Id.* at ¶ 18.) The PSR assigned a base offense level of 34 to the offense, pursuant to U.S.S.G. §2D1.1(a)(5), based upon the quantity of methamphetamine for which the defendant accepted responsibility. (*Id.* at ¶ 19.) A four-level upward adjustment for the defendant's role in the offense was added to the base level offense, pursuant to U.S.S.G. § 3B1.1(a). (*Id.* at ¶ 22.) The United States agrees with the Probation Office that the four-level upward adjustment for the defendant's role in the offense is appropriate, based upon the facts stipulation contained within the defendant's plea agreement, as incorporated in the PSR. (*Id.* at ¶¶ 8-14; ECF Doc. 371, Plea Agreement at ¶ A(4).)

U.S.S.G. § 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1 Application Note 2 further explains:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

USSG § 3B1.1 Application Note 4 contains a number of non-exclusive factors a court may consider in determining a defendant's leadership or organizational or management/supervisory role in an offense. Those factors include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  U.S.S.G. § 3B1.1 Application Note 4.

The defendant argues this leadership adjustment should not apply to her, arguing chiefly that her role was merely supplying large quantities of methamphetamine to co-defendant Dear and that the other factors do not apply to her conduct. "However, U.S.S.G. § 3B1.1(a) does not indicate that all factors from Application Note 4 must be present or that a defendant must engage in all types of activity associated with being the leader or organizer of criminal activity for the enhancement to apply," nor has such a rule been adopted. *United States v. Devaughn*, 526 Fed. Appx. 319, 321 (4th Cir. 2013). And, significantly, the Fourth Circuit has held that fronting drugs to co-conspirators for distribution necessarily "assumes a control position." *United States v. Ford-Bey,* 657 Fed. Appx. 219, 221 (4th Cir. 2016).

3

In *Ford-Bey*, the defendant was a supplier involved in a drug trafficking conspiracy who organized re-distribution of large quantities of cocaine, including directing others to specific locations for deliveries, sending individuals to conduct deliveries on his behalf, and collecting payments for drugs fronted to others from the deliveries. *Id.* In affirming application of the leadership enhancement, the Court emphasized that a defendant need only "exercise[] control over one of his co-conspirators, not that he exercised rigid or exclusive control over any of them." *Id.* In addition, the Court noted that "a dealer who 'fronted' drugs to a lower-level dealer with the expectation that the drugs will be sold and he will be repaid from the proceeds of those sales 'overstep[s] a mere seller's role,' and assumes a control position." *Id.* The Court rejected Ford-Bey's argument that he merely had a "buyer-seller relationship[] between himself and his supplier and those to whom he sold drugs," similar to the argument advanced by Degollado. *Id.* In affirming the application of the enhancement, the Court further stated: "Where a defendant 'retain[s] the financial risk of distribution by fronting or consigning the drugs,' to another dealer, he remains invested in the ultimate distribution of those drugs to their end-users and retains a certain measure of control over those drugs and/or the dealer he has tasked with selling them." *Id.*

Such is the case here. The defendant's offense conduct clearly supports the application of this four-level adjustment, based upon the stipulation of facts she agreed to in her plea agreement. (ECF Doc. 371 at ¶ A(4).) Her conduct goes beyond that of a mere supplier. This conspiracy involved a total of 11 defendants, including Degollado. Degollado was the main source of supply of methamphetamine to co-defendant Dear for this conspiracy, distributing a total of 7 kilograms of methamphetamine for over $37,000. (PSR at ¶ 12.) She admitted she "fronted" methamphetamine to co-defendant Dear on two occasions, meaning she provided the drugs to him

4

at no cost with the expectation of future payment for the drugs after distribution in Virginia. She also admitted she made a hotel reservation for Dear when he traveled to Georgia on one occasion to buy methamphetamine from her. (*Id.*) Degollado also directed activities of others from jail. She directed an unindicted co-conspirator to deliver methamphetamine to Dear on one occasion, as she was incarcerated at the time. (*Id.*) She later directed Dear to pay money for fronted drugs to her mother, as she was again incarcerated and unable to meet Dear to collect the money. (*Id.*) At the time of her last arrest, Dear still owed Degollado $2,000 for methamphetamine she fronted him. (*Id.*) Degollado exercised control over where drug distributions to Dear in Georgia would occur, exercised control over at least one other person who distributed to Dear on her behalf, directed the activities of others from jail, and assumed a control position in the conspiracy by fronting methamphetamine to Dear. These facts demonstrate that the PSR properly applied the leadership enhancement in this case.

After acceptance of responsibility, the PSR assigned a total offense level of 35. (*Id.* at ¶¶ 26, 27, 28.) The PSR determined the defendant's criminal history category to be VI, which corresponds to an imprisonment guidelines range of 292 to 365 months. (*Id.* at ¶¶ 36-38, 65.) The United States agrees that these guidelines calculations are correct and that this is the appropriate guidelines range for this defendant.

## The United States' Sentencing Recommendation

As Section 3553(a) provides, "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of the subsection." 18 U.S.C. § 3553(a). Those purposes include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2).

Here, the starting point for the Court's application of § 3553(a) is the advisory guidelines imprisonment range. With a criminal history category of VI and an offense level of 35, the defendant's effective imprisonment guidelines range is 292 to 365 months.

The Court is instructed to first look at the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Here, the defendant stands convicted of a serious and dangerous offense: conspiring to distribute methamphetamine. As described above, the defendant distributed 7 kilograms of methamphetamine, an extremely dangerous drug that has significantly impacted Southwest Virginia.

As to the defendant's history and characteristics, the defendant has a serious criminal history and is well-versed with the criminal justice system, as demonstrated by her criminal history set forth in the PSR. (*Id.* at ¶¶ 31 – 46.) Her prior and pending criminal history demonstrates that she has a high risk of recidivism. She incurred her first conviction at age 23, was under a criminal justice sentence for six felony convictions (theft and drug related) at the time of the instant offense conduct, and has additional unrelated charges pending in at least two jurisdictions in Georgia. (*Id.* at ¶¶ 31, 37, 40, 41, 43, 45, 46.) The defendant has incurred three probation violation convictions and has a pending failure to appear charge. (*Id.* at ¶¶ 31, 41.) The defendant's probation violations include failure to report as directed to probation and incurring new felony charges, among other violations. (*Id.*) Of her prior convictions, three are felony drug convictions related to methamphetamine and one is a felony drug conviction related to alprazolam. (*Id.* at ¶¶ 33-35.) A charge of trafficking methamphetamine in Jones County, Georgia, was *nolle prossed* in March 2019. (*Id.* at ¶ 44.)

The PSR also lists several additional charges against the defendant that were *nolle prossed* or "dead-docketed." (*Id.* at ¶¶ 42-46.) However, the Cobb County District Attorney's Office

6

advises that they plan to proceed on several of their charges following the conclusion of Degollado's case before this Court; the charges listed in PSR ¶¶ 43, 45, 46 have not yet been *nolle prossed* or formally dismissed.  Accordingly, the defendant's criminal history demonstrates that prior periods of incarceration and probation have had no deterrent effect on the defendant's continued criminal conduct, as particularly demonstrated by the fact that the defendant was under a criminal justice sentence at the time of this offense conduct, her numerous probation violations, pending charges, and that she conducted activities related to this conspiracy while incarcerated on other charges.

Without question, the nature and circumstances of this offense are extremely serious and demonstrate that the defendant's conduct poses a danger to the community.  The Court is well aware of the extent of the methamphetamine problem in Southwest Virginia and the collateral effects this drug has caused throughout the region, as well as the specific dangers posed to the community and law enforcement as a result of this conspiracy.  Furthermore, the defendant's criminal history demonstrates she presents a danger to the community and she has a high risk of recidivism.  These concerns are heightened due to the fact that prior convictions, periods of incarceration, and periods of probation did not serve as a deterrent to the defendant's continued criminal conduct.  All of these factors indicate that a significant period of incarceration is appropriate in this case.

Section 3553(a) next instructs the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.  The sentence should also afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.  18 U.S.C. §§ 3553(a)(2)(A), (B), (C).  Regarding the seriousness of the offense, as detailed above, the defendant's offense conduct was

serious and dangerous, based largely upon the quantity of methamphetamine she distributed and knew would be further distributed in Virginia.

The Court is next instructed to consider the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(B), (C).  As to affording adequate deterrence, the Court must look at deterring not only the defendant from willful violation of the law, but must also impose a sentence which serves as a general deterrent to the public.  Distribution of dangerous drugs like methamphetamine is an extremely serious offense and seriously endangers the public.  Furthermore, the distribution of methamphetamine necessarily endangers the public by furthering substance abuse and addiction and crimes that accompany addiction.  Accordingly, the need for general and specific deterrence is great and is a strong consideration.  A sufficient sentence must also be imposed in this case to afford adequate specific deterrence to criminal conduct and protect the public from further crimes of the defendant, as she has a high risk for recidivism.  The defendant's continued criminal conduct also demonstrates that prior charges, convictions, and periods of incarceration or supervised probation did not deter her conduct.  Thus, specific deterrence and the protection of the public is an even greater consideration here.

In sum, due to the significant danger to the community the defendant poses and her high risk of recidivism, along with the seriousness of circumstances surrounding these offenses, the United States believes that a significant sentence of imprisonment is necessary to promote respect for the law and ensure public safety.  Accordingly, after careful consideration of the above-referenced factors and 18 U.S.C. § 3553(a) as they relate to this case, the United States submits that a sentence within the advisory guidelines is the appropriate sentence.

        Respectfully submitted,

        DANIEL P. BUBAR
        Acting United States Attorney

By: s/*M. Suzanne Kerney-Quillen*
    M. Suzanne Kerney-Quillen
    Special Assistant United States Attorney
    Virginia Bar No. 66633
    United States Attorney's Office
    180 West Main Street, Suite B19
    Abingdon, Virginia 24210
    276-628-4161
    276-628-7399
    Suzanne.Kerney-Quillen@usdoj.gov
    USAVAW.ECFAbingdon@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on April 18, 2021, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

        s/*M. Suzanne Kerney-Quillen*
        M. SUZANNE KERNEY-QUILLEN
        Special Assistant U.S. Attorney